**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**DOCKET NO.: 22-13214-HH**

**DAVID BIRCHFIELD AND MELISSA MCDICKINSON,**
**Appellants – Cross Appellees,**
**v.**
**KA'TORIA GRAY,**
**Appellee – Cross Appellant.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
DISTRICT COURT CIVIL ACTION NO.:2:17-cv-00595-RAH**

**APPELLEE – CROSS APPELLANT'S PRINCIPAL
AND RESPONSE BRIEF**

COUNSEL FOR APPELLEE – CROSS APPELLANT

Heather Newsom Leonard
HEATHER LEONARD, P.C.
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
(205) 977-5421
Heather@HeatherLeonardPC.com

Cynthia Forman Wilkinson
Wilkinson Law Firm, P.C.
1317 Third Avenue North
Suite A
Birmingham, AL 35203
(205) 250-7866
cwilkinson@wilkinsonfirm.net

Alicia K. Haynes
Charles E. Guerrier
HAYNES & HAYNES, P.C.
1600 Woodmere Drive
Birmingham, AL 35226
(205) 879-0377
akhaynes@haynes-haynes.com
ceguerrier@haynes-haynes.com

Date: November 14, 2023

Birchfield, et al. v. Gray
Docket No. 22-13214-HH
District Court No. 2:17-cv-595-RAH

---

APPELLEE/CROSS-APPELLANT'S
CERTIFICATE OF INTERESTED PERSONS

---

Pursuant to Rule 26.1, Fed. R. App. Proc. and Eleventh Circuit Rule 26.1-1, the undersigned counsel of record for the Appellee/Cross-Appellant Ka'Toria Gray hereby certifies the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations (including subsidiaries, conglomerates, affiliates, parent corporations and any publicly held corporation which owns 10% or more of the party's stock), and other identifiable legal entities related to a party that has an interest in this case.

**Adams, Jerusha T.** – Magistrate Judge

**Baer, Andrew** - Counsel for Appellants/Cross-Appellees Melissa McDickinson and David Birchfield

**Barlotta, Rachel** – Counsel for Defendants/Cross-Appellees Koch Foods, Inc. and Koch Foods of Alabama, LLC

**Birchfield, David** – Appellant/Cross-Appellee

**Capel, Wallace, Jr.** – Magistrate Judge

**Doyle, Stephen Michael** – Magistrate Judge

C1 of 3

**Edwards, Sonya** – Former Counsel for Plaintiff/Appellee/Cross-Appellant

**Elrod, Bobby** – Employee of Defendant/Cross-Appellee Koch Foods, Inc.

**Fancher, Sharonda Childs** – Former Counsel for Defendants/Cross-Appellees Koch Foods, Inc. and Koch Foods of Alabama, LLC

**Fisher Phillips LLP** – Counsel for Appellants/Cross-Appellees Melissa McDickinson and David Birchfield

**Goerdt, Corey Joseph Myers** - Former Counsel for Appellants/Cross-Appellees Melissa McDickinson and David Birchfield

**Guerrier, Charles E.** – Counsel for Plaintiff/Appellee/Cross-Appellant

**Haynes, Alicia K.** – Counsel for Plaintiff/Appellee/Cross-Appellant

**Haynes & Haynes, PC** - Counsel for Plaintiff/Appellee/Cross-Appellant

**Huffaker, R. Austin, Jr.** – **District Court Judge**

**Koch Foods of Alabama, LLC** – Defendant/Cross-Appellee

**Jackson, Steven** – Witness

**Karlson, Daisy Christina** – Former Counsel for Defendants/Cross-Appellees Koch Foods Inc. and Koch Foods of Alabama, LLC

**Koch Foods, Inc.** – Defendant/Cross-Appellee

---

**Leonard, Heather Newsom** – Counsel for Plaintiff/Appellee/Cross-Appellant

**Marks, Emily C.** – **District Court Judge**

**McDickinson, Melissa,** Defendant/Appellant/Cross-Appellee

**Reese, Annalese Herndon** – Former Counsel for Appellants/Cross-Appellees Melissa McDickinson and David Birchfield

**Smith, Ashley Nicole of Miller Smith, LLC** – Counsel for Steven Jackson

**Spade, Jessica Brookshire** – Counsel for Defendants/Cross-Appellees Koch Foods, Inc. and Koch Foods of Alabama, LLC

**Thompson, Myron H.** – **District Court Judge**

**Walker, Marion F.** – Counsel for Appellants/Cross-Appellees Melissa McDickinson and David Birchfield

**Wilkinson, Cynthia Forman** – Counsel for Plaintiff/Appellee/Cross-Appellant

/s/ *Heather Newsom Leonard*
Heather Newsom Leonard
Counsel for Cross-Appellant

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant believes that oral argument would be helpful in resolving the issues raised by this appeal.

/s/ *Heather Newsom Leonard*
Heather Newsom Leonard
Counsel for Ka'Toria Gray
Appellee - Cross Appellant

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . C1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv
    Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv
    Federal Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii
    State Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii
    Rules of Civil Procedure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii
    Rules of Appellate Procedure. . . . . . . . . . . . . . . . . . . . . . . . . . . . viii
    Other Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

STATEMENT REGARDING ADOPTION OF BRIEF OF
ANOTHER PARTY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Subject Matter Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CROSS-APPELLANT'S STATEMENT OF ISSUES AND STANDARDS OF
REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Supplement Statement of Course Of Proceedings And
        Disposition Below. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Supplemental Statement Of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

I.     Response To Arguments Of Appellants Birchfield And McDickinson. . . 20

A. Gray Proved Assault And Battery.. . . . . . . . . . . . . . . . . . . . . . . . 20

B. The Evidence Met The Punitive Damages Standard... . . . . . . . . . . . 26

C. Gray Prevailed Against Appellants. . . . . . . . . . . . . . . . . . . . . . . . . 33

II. Arguments Of Appellee - Cross Appellant.. . . . . . . . . . . . . . . . . . . . . . 38

A. The District Court Erred By Granting Summary Judgment
On Gray's Constructive Discharge Claim... . . . . . . . . . . . . . . . . . . 38

B. Gray Is Entitled To A New Trial For Her Title VII Claim
Against AlaKoch.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

    i. Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

    ii. Legal Standard.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    iii. Gray's Title VII Claim Against AlaKoch.. . . . . . . . . . . . . 47

C. The District Court Erred By Awarding Costs To The Koch
Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

    1. There Can Only Be One Prevailing Party.. . . . . . . . . . . . . 51

    2. Ka'Toria Gray Is The Presumptive Prevailing Party.. . . . . . 54

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

iii

**TABLE OF CITATIONS**

**Cases:**

*Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253 (11th Cir. 2010). . . . . . . . . . 4

*Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289 (11th Cir. 2021). . . . . . 5, 33

*Bennett v. State*, 57 Ala. App, 568, 329 So. 2d 627
 (Crim. App. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20, 21, 23, 24, 49

*Berry v. Fite*, 590 So.2d 884 (Ala. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . 18, 30

*Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333 (11th Cir. 2005). . . . . . . . 36

*Buckhannon Bd. & Care Home, Inc. V. W. Va. Dep't of Health
& Hum. Res.*, 532 U.S. 598 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35, 54

*Catlin v. United States*, 324 U.S. 229 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000) . . . . . . . . . . . . . . . 8, 56

*Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.3d 1498 (11th Cir. 1990). . . . . . . 36

*CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419 (2016). . . . . . . . . . . . . . 55

*Ex parte Atmore Cmty. Hosp. v. Hayes*, 719 So.2d 1190  (Ala. 1998). . . . 20, 21, 23

*Farmaceutisk Laboratorium Ferring A/S v. Reid Rowell, Inc.*,
142 F.R.D. 179 (N.D. Ga. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Fredette v. BVP Management Assoc.*, 112 F.3d 1503 (11th Cir. 1997). . . . . . . . . 51

*Gilchrist v. Bolger*, 733 F.2d 1551 (11th Cir. 1984). . . . . . . . . . . . . . . . . . . . 56

*Gray v. Koch Foods, Inc.*, 580 F.Supp.3d 1087 (M.D. Ala. 2022). . . . . . . . . . . . 6

*Green v. Brennan*, 578 U.S. 547 (2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Gulf Atl. Life Ins. Co. v. Barnes*, 405 So.2d 916 (Ala. 1981). . . . . . . . . . . . . . . . . 27

*Head v. Medford*, 62 F.3d 351 (11th Cir. 1995).. . . . . . . . . . . . . . . . . 18, 34, 54, 56

*Hensley v. Eckerhart*, 461 U.S. 424 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

*Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982). . . . . . . . . . . . . . . . . . . 38

*Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554 (11th Cir. 1984). . . . . . . . . . . . . 4, 46

*Honeycutt v. Louis Pizitz Dry Goods Co.*, 235 Ala. 507,
180 So. 91 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hyde v. Cain*, 47 So. 1014 (1908). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kollsman, A Div. of Sequa Corp.*, 996 F.2d 702 (4th Cir. 1993). . . . . . . . . . . . . 55

*Lambert v Fulton County*, 253 F.3d 588 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . 46

*Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305 (11th Cir. 2001). . . . . . . . . . . 34

*Livingston v. Marion Bank & Trust Co.*, 30 F.Supp.3d 1285
(N.D. Ala. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Llampallas v. Mini-Circuits, Lab, Inc.*, 162 F.3d 1236 (11th Cir. 1998). . . . . . . . 51

*Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7 (1st Cir. 2002). . . . . . . . . . . . . 42

*Mathews v. Crosby*, 480 F.3d 1265 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 36

*McDonald v. Royal Glove Ins. Co.*, 413 So.2d 1046 (Ala. 1982). . . . . . . . . . . . . 23

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998). . . . . . . . . . . . 50

*Patton v. Keystone RV Co.*, 455 F.3d 812 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . 41

*Peete v. Blackwell*, 504 So.2d 222 (Ala. 1986).. . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). . . . . . . . . . . . . . . . . . 38

*Perry v. Schumacher Group of Louisiana*, 891 F.3d 954 (11th Cir. 2018). . . . . . . 36

*Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133 (2000). . . . . . . . . . . . . . . . 22

*Royal Palm Properties, LLC v. Pink Palm Properties, LLC,*
38 F.4th 1372 (11th Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 37, 52-54

*Scott v. Advanced Pharmaceutical Consultants, Inc.*, 84 F.4th 952
(11th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Shum v. Intel Corp.*, 629 F.3d 1360 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . 54

*Singer Sewing Mach. Co. v. Methvin*, 184 Ala. 554 (Ala. 1913). . . . . . . . . . . . . 21

*Smith v. Metropolitan Sec. Services, Inc.*, 537 F. App'x 864 (11th Cir. 2013). . . . 32

*Sure Tan, Inc. v. NLRB*, 467 U.S. 883 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Surrency v. Harbison*, 489 So.2d 1097 (Ala. 1986). . . . . . . . . . . . . . . . . . . . . 21, 31

*Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989).. . 34, 54

*United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . 4

*Vinson v. Koch Foods of Ala, LLC*, No. 2:12-cv-1088-ECM-SRW,
2019 WL 6971497 (M.D. Ala. Jan. 29, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Wal-Mart Stores, Inc. v. Thompson*, 726 So.2d 651 (Ala. 1998). . . . . . . . . . . . . 27

*Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272 (11th Cir. 2003). . . . . 39

*Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159 (11th Cir. 2017).. . . . . 34

**Federal Statutes:**

28 U.S.C. § 41 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 2000e *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 2000e-5(f)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**State Statutes:**

§ 6 – 11 – 20, Ala. Code 1975.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

§ 6 – 11 – 20(a), Ala. Code 1975. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 26, 30

§ 6 – 11 – 20(b)(2), Ala. Code 1975. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

§ 6 – 11 – 20(b)(3), Ala. Code 1975. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

§ 6 – 11 – 20(b)(4), Ala. Code 1975. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

§ 6 – 11 – 20(b)(5), Ala. Code 1975. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**Rules of Civil Procedure:**

Rule 6(a)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rule 6(a)(6).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rule 41(b), Fed. R. Civ. Proc.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Rule 50(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rule 54(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 52, 53, 55

**Rules of Appellate Procedure:**

Rule  4(a)(3).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rule 32(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Rule 32(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Rule 32(a)(7)(B)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Rule 32(f).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

**Other Authorities:**

Charles Alan Wright, et al., *Federal Practice & Procedure* (3rd ed. 2012). . . . . . 45

Webster's New Twentieth Century Dictionary (Unabridged)
(Second Edition 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# STATEMENT REGARDING ADOPTION OF
# BRIEF OF ANOTHER PARTY

The Appellee – Cross Appellant Ka'Toria Gray does not adopt any portion of

briefs of other parties.

/s/ *Heather Newsom Leonard*
Heather Newsom Leonard
Counsel for Ka'Toria Gray
Appellee – Cross Appellant

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

**Subject Matter Jurisdiction**

Appellee - Cross Appellant Ka'Toria Gray (hereinafter "Gray" or "Appellee") brought various claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. She named Koch Foods of Alabama, LLC ("AlaKoch") and Koch Foods, Inc. ("Koch") as Title VII Defendants (collectively the "Koch Defendants"). For her § 1981 claims, she named the Koch Defendant entities as well as Appellants Melissa McDickinson ("McDickinson") and David Birchfield ("Birchfield") (collectively "Appellants"). Subject matter jurisdiction of the federal claims was based on 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

Appellee brought various state tort claims (assault, battery, invasion of privacy, intentional infliction of emotional distress, and negligent/wanton supervision, training, and retention) against all Defendants. Supplemental jurisdiction over the state law claims existed pursuant to 28 U.S.C. § 1367.

**Appellate Jurisdiction**

Appellate jurisdiction arises under 28 U.S.C. §§ 41 and 1291. A Final Judgment, incorporating the jury's verdict as to all parties, as well as the District

1

Court's judgment as to costs, was entered on March 17, 2022. (Doc. 504.) Appellants filed motions under Rule 50(b), Fed. R. Civ. Proc., on March 22, 2022. (Doc. 508). Gray filed a motion for a new trial on April 14, 2022. (Doc. 513.) Gray and the Koch Defendants each filed a Bill of Costs on April 20, 2022. (Doc. 516; Doc. 518.) Gray also filed a motion to include reasonable attorney's fees as part of the costs awarded against Appellants. (Doc. 517.) The Clerk taxed costs against Appellants (Doc. 523), and Gray (Doc. 522), on May 4, 2022. Gray objected to the costs the clerk taxed to the Koch Defendants. (Doc. 531; Doc. 541.)

On July 28, 2022, the District Court denied Appellants' Rule 50(b) motion (Doc. 537), and Gray's motion for a new trial. (Doc. 538.) The District Court granted, in part, Gray's motion to include attorney's fees as part of the costs. (Doc. 539.)

Appellants filed a motion to reconsider the award of costs to Gray on August 22, 2022. (Doc. 546.) They then filed a motion to extend the deadline to appeal on August 23, 2022. (Doc. 547.) The District Court granted the motion extending the deadline to appeal as to all parties until September 26, 2022. (Doc. 550.) Appellants filed their notice of appeal on September 26, 2022. (Doc. 554.)

October 10, 2022, being a legal holiday, Gray filed her timely notice of appeal on October 11, 2022. (Doc. 560.) Rule 4(a)(3), Fed. R. App. Proc.; Rule 6(a)(6), Fed.

R. Civ. Proc.; Rule 6(a)(1)(C), Fed. R. Civ. Proc.

On December 12, 2022, the District Court denied Appellants' motion to reconsider the award of costs against Appellants, reserving certain issues as to particular items of costs pending exhaustion of the appeals. (Doc. 571.)

**CROSS-APPELLANT'S STATEMENT OF ISSUES
AND STANDARDS OF REVIEW**

1.      Whether the District Court erred in granting summary judgment on Gray's Title VII sexual harassment constructive discharge claim.

This Court reviews the grant of summary judgment *de novo*. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is proper only if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. Proc.

2.      Whether the District Court erred in denying Gray's motion for a new trial on her Title VII sexual harassment claim against Koch Foods of Alabama, LLC.

A judge should grant a motion for a new trial when the verdict is against the great weight of the evidence or when the verdict would cause a miscarriage of justice. *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984). The standard of review on a motion for a new trial is abuse of discretion. *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524, 1528 (11th Cir. 1993). An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment. *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).

3. Whether the District Court erred in designating the Koch Defendants as "prevailing parties" and awarding them their costs.

When reviewing a district court's prevailing party determination, the Court reviews the underlying factual findings for clear error but reviews *de novo* the legal question of whether those facts suffice to render a party a "prevailing party." *Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1297 (11th Cir. 2021).

## STATEMENT OF THE CASE

**Supplement Statement of Course Of Proceedings And Disposition Below**

Appellee corrects and supplements Appellants' *Statement Of The Course Of Proceedings And Disposition Below* with the following:

Appellants misstate the record when they claim the Court denied all motions for summary judgment. The Docket entries relied upon to support this statement do not relate to summary judgment. (Appellants' Brief:4, citing Docs. 392-394.) Doc. 392 is an order denying Defendants' First Joint Motion in Limine. Similarly, Doc. 393 is an order denying Defendants' joint motion to exclude a witness from testifying. Doc. 394 is an order denying Defendants' joint motion to exclude certain witnesses, but permitting Defendants to depose those witnesses.

Rather than denying the motions for summary judgment, the District Court granted them in part and denied them in part. *Gray v. Koch Foods, Inc.*, 580 F.Supp.3d 1087, 1136 (M.D. Ala. 2022) (Doc. 415:71-72). Of particular importance to this appeal, the District Court granted summary judgment as to Gray's sexual harassment constructive discharge claim. (Doc. 415:38.)

Appellants' description of the record is incomplete with regard to the matter of costs. On April 21, 2022, Gray filed her Bill of Costs. (Doc. 517.) That same date, she filed a motion to include reasonable attorney's fees as part of the costs for work

6

performed with regard to the voluntarily dismissed counterclaims. (Doc. 517.)

On May 4, 2022, the Clerk taxed costs against Gray (and in favor of the Koch Defendants) (Doc. 522), and against McDickinson and Birchfield (and in favor of Gray). (Doc. 523) Gray objected to the Koch Defendants' bill of costs. (Doc. 531.)

On July 28, 2022, while the objections to costs were pending, the District Court ruled that Gray was entitled to any additional reasonable costs which she incurred associated with her defense of the counterclaims, but not her attorneys' fees. (Doc. 539.) Soon thereafter, Gray submitted her second objection to the Koch Defendants' bill of costs. (Doc. 541.) Gray's second objection incorporated arguments based upon this Court's opinion in *Royal Palm Properties, LLC v. Pink Palm Properties, LLC.*, 38 F.4th 1372 (11th Cir. 2022), issued after the Final Judgment in this case designating the Koch Defendants as prevailing parties. Gray argued that the District Court erred by identifying more than one prevailing party. (Doc. 541:3-7.)

On August 23, 2022, McDickinson and Birchfield filed a motion to reconsider the District Court's order granting Gray additional costs associated with defending the dismissed counterclaims. (Doc. 546.)

Both parties filed their notices of appeal (Doc. 550; Doc. 560) before the District Court ruled on the various objections to the items of costs and the motion to reconsider. On December 12, 2022, the District Court denied the motion to

reconsider and reserved the issues concerning particular items of costs until after the Eleventh Circuit issues its final mandate on this appeal.  (Doc. 571:2.)

**Supplemental Statement Of Facts**

The following statement of supplemental facts are pertinent to Gray's appeal from the District Court's order granting summary judgment on her Title VII constructive discharge claim against Koch Foods of Alabama, LLC.  These facts are based only on the summary judgment record which was before the District Court when the motion was decided. *Chapman v. AI Transport*, 229 F.3d 1012, 1026-27 (11th Cir. 2000) (the appellate court may only examine the evidence which was before the district court when the motion for summary judgment was decided and may not consider the evidence introduced at a subsequent trial).

Koch Foods of Alabama, LLC ("AlaKoch"), a chicken processing company in Montgomery, Alabama, is a wholly owned, but independent, subsidiary of Koch Foods, Inc.  (Doc. 242-7:31:12-32:23.)  AlaKoch operates three facilities that make up the Montgomery complex: the kill plant, the debone plant, and a hatchery. *Id.*  The kill and debone facilities have separate human resource departments, each with their own manager.

Birchfield was the Complex Human Resources Manager for AlaKoch from 2010 to 2016.  He was responsible for HR at all of AlaKoch's facilities.  He reported

to Bobby Elrod, the Corporate Director of Human Resources for Koch Foods, Inc., a separate corporate entity from AlaKoch. (Doc. 242-7:31:12-323:23.) While Elrod could hire and fire the complex human resources managers under his supervision, he did not make hiring and firing decisions below that level. (Doc. 242-7:37-38[139:9-145:7].)

McDickinson was the HR manager for the debone plant. (Doc. 242-6:202:10:12-204:17.) Birchfield hired and supervised her. (Doc. 272-11:16-17.) As the HR manager, she was responsible for the debone HR department. (Doc. 242-6:108:7-22.) Birchfield and McDickinson had the authority to terminate non-management employees working in their respective facilities. (Doc. 242-7:37-38[139:9-145:7].)

AlaKoch had a harassment policy that prohibited conduct of a sexual nature, including sexual flirtations, propositions, requests, or demands for sexual favors; unwelcome advances or touching; verbal, physical or visual conduct of a sexual nature. (Doc. 242-1:177-179.) Birchfield provided annual harassment training on this policy to AlaKoch's salaried managers. (Doc. 272-8:19:18-20:8; 21:7-16.) As part of this training, Birchfield described how power is central to sexual harassment and that a victim "is more likely to submit to and less likely to complain when the harasser is a supervisor." (Doc. 212-1:216.) The training also cautioned managers

9

that a victim may be motivated to keep harassment secret, out of fear of losing a job or reliving the trauma. *Id.* at 225.

McDickinson acknowledged reviewing AlaKoch's policy on August 4, 2014. (Doc. 242-1:177.) While HR was primarily responsible for enforcing the policy, McDickinson understood that "it was everybody's responsibility, even employees, if they seen [sic] harassment or if they were doing the harassing." (Doc. 242-6:115:7-14.)

Despite this training, both Birchfield and McDickinson engaged in sexual interactions with other AlaKoch employees. McDickinson asked Steve Jackson, union steward, to have sex with her while Birchfield watched. (Doc. 272-13:¶3.) Jackson put up with these demands because Birchfield told him that he had the "power to hire, fire and promote" Jackson. *Id.* at pp. 2-3. Jackson showed Irish Jenkins, an hourly employee, several pictures of Birchfield and McDickinson naked in bed. (Doc. 272-1:25:10-19: 27:1-14; 28:18-29:1; 29:8-15; 32:8-15.)

McDickinson also sexually harassed HR Clerk Harvey Fuller by pressing her breasts up against him, touching his chest and asking for sex and sexual favors. (Doc. 242-7:151:6-152:20; 526:15-18.) After Fuller filed a charge with the EEOC, Birchfield paid another individual $200.00 to threaten Fuller so that he would drop his EEOC charge. (Doc. 272-2:301:11-20.)

McDickinson engaged in similar conduct with Irish Jenkins. She would make sexual comments to Jenkins and describe her sexual preferences to him. (Doc. 272-1:128:10-129:4; 275:8-17.) Eventually she began to have sexual contact with Jenkins, both inside and outside the workplace. (Doc. 272-1:189:15-16; 113:13-114:7; 146:21-148:7; 375:13-382:11; 389:5-15.)

In early 2015, rumors spread throughout the Montgomery facility that McDickinson was having sex with numerous AlaKoch employees. (Doc. 242-1:312.) After learning about these rumors from another employee, Randy Davenport, the plant manager, followed policy and notified Birchfield. *Id.* at 314-18. Davenport also notified Koch Foods's regional vice president, Wally Lewis. (Doc. 242-8:27.) Lewis then instructed Birchfield to investigate. As a result of Birchfield's investigation, he disciplined the employee who had reported her concerns to Davenport and no one else. (Doc. 242-1:321-322.)

Birchfield hired Gray in 2011 to work at the debone plant providing medical treatment to AlaKoch employees. (Doc. 242-4:26:11-15; 29:23-30:13.) Gray's first supervisor was the safety manager at the debone plant. (Doc. 242-4:26:22-27:21.) After that individual left, Gray did not report to any particular supervisor but was placed under the supervision of Frank Sheley, who was employed by a different Koch entity in Georgia. (Doc. 242-4:34:12-35:8; 296:14-297:11.) Over the course of

11

Sheley's supervision of Gray, she only saw him twice and had infrequent communications with him. (Doc. 242-4:66:9-67:1.)

Birchfield and McDickinson had the authority to take tangible employment actions against employees of AlaKoch, including overriding or changing recommendations from supervisors. (Doc. 272-2:53:15-57:3.)

Prior to November 14, 2015, Gray did not have any personal or social interactions, or discuss her personal life, with McDickinson. (Doc. 242-4:79:13-83:19.) But Birchfield and McDickinson were interested in Gray. Birchfield told at least two hourly employees, Jackson and Jenkins, that he and McDickinson were interested in having group sex with Gray. (Doc. 272-14:¶7.) McDickinson and Birchfield asked Jenkins to approach Gray about having sex with them. *Id.* McDickinson had a similar conversation with Jackson in November 2015. (Doc. 272-13:¶3.)

On November 14, 2015, McDickinson instructed Jackson to contact Gray and tell her that she had permission to clock out and attend at cook-out at McDickinison's home. McDickinson told Jackson to tell Gray that she and Birchfield wanted to discuss a new promotion and position with her. (Doc. 242-7:815.) Although reluctant to accept the invitation, Gray believed McDickinson would fire her if she did not attend. (Doc. 242-4:198:22-110:13.) Gray went to McDickinson's house

12

after her shift ended, around 11:00 p.m. (Doc. 242-2:148:6-23.) When she arrived, Birchfield, McDickinson and Jackson were the only people present. (Doc. 242-2:130:7-23.) They directed her into the garage. (Doc. 242-4:125:10-125:20.) After a period of small talk, during which time McDickinson and Birchfield offered alcohol to Gray, Gray asked what they needed to talk to her about. (Doc. 273-1:¶2(c).) McDickinson and Birchfield told Gray they would have to be able to trust her. (Doc. 273-1:¶2(d).) McDickinson explained that Birchfield wanted to get rid of Betty Stabler, the medical manager in the facility who was causing trouble for Gray. He wanted to promote Gray to the position. (Doc. 242-2:148:14-150:6.) McDickinson and Birchfield again asked Gray if they could trust her and then asked her if she would write a school paper for McDickinson. (Doc. 242-4:150:17-157:5.)

The atmosphere then changed. While sitting in a chair next to McDickinson, McDickinson leaned in towards Gray, put her hand on Gray's knee, and told Gray she smelled "really good." (Doc. 242-4:165:17-166:3.) Gray removed McDickinson's hand, but McDickinson leaned in again and told Gray that she was attracted to her. *Id.* Gray rebuffed McDickinson's advances, telling her she was making Gray feel uncomfortable. (Doc. 242-4:166:6-7.)

All the while, Birchfield was sitting nearby, watching. He then chimed in, saying that he wanted to watch Gray and McDickinson dance. (Doc. 242-4:166:6-

18.) Gray declined, but McDickinson grabbed Gray's hand, pulled her up, and encouraged her to dance. (Doc. 242-4:168:20-23.) When Gray again refused, McDickinson told Birchfield to make Gray a drink, which she again declined. (Doc.242-4:166:16-18.)

Things then rapidly escalated. Birchfield came up behind Gray and said he wanted to see Gray and McDickinson dance. He then pressed his body against Gray's back while McDickinson pressed her body into Gray's front, squeezing her between them. (Doc. 242-4:166:19-23: 168:20-169:6.) McDickinson then grabbed Gray's hand and put it on McDickinson's breast, telling Gray to feel them. (Doc. 242-4:166:21-167:7.) Gray pulled her hand away. (Doc. 242-4:167:4-5.) Meanwhile, Birchfield was behind Gray, trying to kiss her neck. He told Gray he wanted to kiss her because he had never kissed anyone with braces. (Doc. 242-4:167:1;170:16-23:174:4-15.) As Gray tried to pull away, Birchfield kissed her on the lips. (Doc. 242-4:175:9-21.) McDickinson then asked Gray to have sex with her and Birchfield, but Gray refused. (Doc. 273-1:4.) Rebuffed, McDickinson suggested, instead, that she and Gray have sex while Birchfield watched. Again, Gray refused. (Doc. 242-4: 46; Doc. 273-1:4.) Then, McDickinson approached Birchfield, pulled his pants down, pulled out his penis, and began to perform oral sex on him in front of Gray. (Doc. 242-4:46; Doc. 273-1:4.)

14

Shocked and terrified, Gray fled to the bathroom, composed herself, and then fled from the house. (Doc. 242-4:51-52; Doc. 273-1:4.) Birchfield then instructed Jackson, who had seen all of this, to lie if anyone questioned him about the evening and to specifically state that Birchfield was not present. (Doc. 272-13:247:1-7.)

About one week after the garage incident, McDickinson summoned Gray to her private office. (Doc. 242-4:196:16-197:1.) Gray walked in, where she observed McDickinson sitting at her desk, her blouse unbuttoned and without a bra. McDickinson told Gray she had a sunburn, walked over to Gray, and pressed her breasts against Gray's breasts. (Doc. 242-4:197:8-198:10.) Gray backed away, told McDickinson she was not interested, and left the room. (Doc. 242-4:198:11-199:21.)

While this was the last occasion in which McDickinson touched Gray, McDickinson continued to invite Gray to her house, and even invited Gray to go to the beach with her and Birchfield. These unwelcome invitations continued into late February 2016. (Doc. 273-1:5.)

Meanwhile, Gray had told two supervisors, Francisco Santos and Tim Berry, that she was uncomfortable being alone with McDickinson. (Doc. 273-1:5.) She shared with them the facts about the sexual advances made toward her at the house and other conduct which made her uncomfortable. *Id.* She asked these supervisors to stay with her if McDickinson asked to see her in the bull-pen area. *Id.* Santos did

15

not tell anyone about Gray's complaints and did nothing in response to what Gray had told him.  (Doc. 242-9:34:19-35:5.)

In early March 2016, the issues with Stabler came to a head.  Gray believed that Stabler was treating her differently from the white employees because of her race. On March 14, 2016, Gray took her complaints about Stabler to Sheley.  (Doc. 242-4:330:6-330:17.)  Gray copied Birchfield and McDickinson on her email to Sheley. (Doc. 242-2:74.)

On March 21, 2016, McDickinson suggested to Gray that they meet with Birchfield to discuss the Stabler issue.  Gray agreed, believing that, as HR, they would come up with a solution to the problem.  (Doc.  242-4:217:20-23.)  At the meeting, Birchfield presented Gray with a choice: report to him or report to McDickinson.  (Doc. 242-4:219:12-20:9.)  When Gray said she did not know how to respond, Birchfield decided Gray should work a different schedule and start reporting to McDickinson.  *Id.*  On March 28, 2016, Birchfield instructed McDickinson to work the same shift as Gray, to watch Gray and to document her activities.  (Doc.  242-2:68, PX 64.)

Then, in April, Birchfield asked Gray to go to Florida with him and McDickinson.  (Doc. 273-1:5). Gray declined the offer. *Id.*  On April 14, 2016, McDickinson issued a Memorandum of Understanding to Gray in which she alleged

that Gray had failed to report her absences or tardies on April 8, 11 and 12. (Doc. 242-2:82.) McDickinson's allegations were false, because Gray had reported her absences to Laura Cortes of the HR office, as McDickinson was out of town on those days. (Doc. 242-4:356:22-357:11.)

Gray then concluded that she had no choice but to resign. (Doc. 273-1:5.) McDickinson had continued to make sexual advances towards her, Birchfield had placed Gray under McDickinson's supervision, and McDickinson had wrongly written Gray up for not calling-in. Gray was experiencing what Birchfield had explained during the sexual harassment training: McDickinson had power over Gray and could punish her for not agreeing to have sex with her and Birchfield. *Id.* She believed that Birchfield and McDickinson ultimately would find some pretextual reason for firing her because she would not have sex with them. *Id.* Her last day of work for AlaKoch was April 29, 2016. Gray had told friends that she felt unsafe and threatened at work and had been seeking medical care and counseling since the events at McDickinson's home. (Doc. 242-9:42:1-50:18; Doc. 242-4:282:4-285:2; Doc. 273-1:5.)

**SUMMARY OF THE ARGUMENT**

In response to Appellants' arguments, Appellee argues the following:

Assault and battery occurs when a person takes improper liberties with another, or indecently fondles a person without consent. *Bennett v. State*, 57 Ala. App. 568, 571 (Crim. App. 1976). The overwhelming evidence establishes that, on November 14, 2015, Appellants' took improper liberties with Gray by touching her in a sexual manner against her will, and subjecting her to a condition in which she feared for her safety.

Further, these events were not the result of ordinary social interactions. The clear and convincing evidence demonstrates that Appellants consciously and deliberately planned the events leading up to the assault and battery, and utilized their power as Gray's supervisors to lure her to the isolated location where they could execute their plan. § 6-11-20(a), Ala. Code 1975; *Berry v. Fite*, 500 So.2d 884 (Ala. 1991).

Because the jury found in favor of Gray on her assault and battery claims, and awarded Gray both compensatory and punitive damages against Appellants, Gray was properly designated as the prevailing party, entitling her to her costs. The fact that Gray did not prevail on all of her claims against Appellants does not change that result. *Head v. Medford*, 62 F.3d 251, 354-55 (11th Cir. 1995).

18

In support of her own appeal, Gray argues that the District Court erred in granting summary judgment on her Title VII sexual harassment constructive discharge claim. While such claims require more evidence that the mere existence of a sexually hostile environment, the evidence presented to support Gray's claim meets this standard. The conduct which Gray endured, at the hands of her supervisors, went well beyond the level necessary to establish a sexually hostile work environment. Further, even after Gray rebuffed Appellants' initial groping and fondling, Appellants continued in their attempts to get Gray to vacation with them and engage in sexual conduct. Finally, when Birchfield decided to make McDickinson Gray's supervisor, with the authority to alert the terms and conditions of Gray's employment, Gray reasonable believed that it was no longer safe for her to work at AlaKoch. The District Court erred in granting summary judgment on this claim.

The District Court also erred in denying Gray's motion for a new trial on her Title VII sexual harassment claim. The great weight of the evidence demonstrates that McDickinson and Birchfield made sexual advances towards Gray, both on November 14, 2015, and afterwards. The jury's conclusion that Gray was not harassed because of her sex is not supported by the great weight of the evidence and it would be a miscarriage of justice to permit it to stand.

Finally, the District Court erred by designating multiple prevailing parties in the Final Judgment. Controlling precedent in this Circuit holds that there can only be one prevailing party in an action.

## ARGUMENT

## I. Response To Arguments Of Appellants Birchfield And McDickinson.

### A. Gray Proved Assault And Battery.

If a person takes improper liberties with another, or indecently fondles a person without consent, that person is guilty of the *crimes* of assault and battery. *Bennett v. State*, 57 Ala. App. 568, 571, 329 So. 2d 627, 629 (Crim. App. 1976). The plaintiff in a civil action alleging the torts of assault and battery need not meet the criminal standard but need only prove: (1) the defendant touched the plaintiff; (2) the defendant intended to touch the plaintiff; and (3) the touching was conducted in a harmful or offensive manner. *Ex parte Atmore Cmty. Hosp. v. Hayes*, 719 So.2d 1190, 1193 (Ala. 1998). Gray proved, by substantial evidence, each of these elements as to both Appellants.

As the District Court explained to the jury, "[t]he word "offensive" means the conduct is likely to offend a reasonable person." (Doc. 500:12.) Gray did not need to prove the Appellants intended to harm her, and she did not need to prove actual

injury. "An actual injury to the body is not a necessary element of a civil assault and battery." *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala. 1986), *citing Bennett v. State*, 57 Ala. App. 568, 571 (1976). The rude or offensive touching of another person's body or clothes is a battery. *Hyde v. Cain*, 47 So. 1014, 1014 (1908). A cause of action for assault and battery can be based upon a negligent act that results in an unintentional injury. It is not essential to the cause of action that the defendant intended the injury upon the plaintiff. *Honeycutt v. Louis Pizitz Dry Goods Co.*, 235 Ala. 507, 180 So. 91 (1938); *Singer Sewing Mach. Co. v. Methvin*, 184 Ala. 554, 561 (Ala. 1913) (touching another rudely and insolently[1] is a battery and may justify damages proportioned to the rudeness). The Alabama Supreme Court has found sufficient evidence of a battery where the plaintiff's supervisor "touched her waist, rubbed against her when passing her in the hall, poked her in the armpits near the breast area, and touched her leg." *Ex parte Atmore Comm. Hosp.*, 719 So.2d at 1194; *Livingston v. Marion Bank & Trust Co.*, 30 F.Supp.3d 1285, 1323 (N.D. Ala. 2014) (intentional, gratuitous, and unwelcome touching, conducted with sexual overtones, sufficient to support assault and battery).

Disregarding all evidence favorable to Appellants that the jury was not required

---

[1]To be "insolent" is to show haughty disregard of others. To be "haughty" is to have a high opinion of oneself with some contempt for others. Webster's New Twentieth Century Dictionary (Unabridged) (Second Edition 1983).

to believe, and giving credence to the evidence supporting Gray, *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 151 (2000), Appellants' conduct on the night of November 14, 2015, and McDickinson's subsequent conduct in the workplace, would offend a reasonable person and meets the standards for establishing assault and battery. On November 14, McDickinson touched Gray's knee while commenting that she found her attractive. She then asked Gray to engage in sexual acts with her and Birchfield. Birchfield, for his part, encouraged McDickinson as she pulled Gray out of her chair in an attempt to force her to dance. When Gray refused, Birchfield squeezed his body against Gray's, trapping her between himself and McDickinson and causing McDickinson's breasts to be pressed against Gray. Birchfield then kissed Gray against her will. These facts are sufficient to establish that Appellants' conduct toward Gray was both rude and insolent.

When the record is viewed in its entirety and measured against the controlling legal standards, the overwhelming evidence establishes that Birchfield and McDickinson committed the torts of assault and battery.

Appellants, apparently unable to meet the legal standard applicable to Gray's claims[2], asks this Court to adopt different standards and to review the evidence in the

---

[2]The legal standards advocated by Appellants on appeal are not the standards Appellants advocated when they submitted their proposed jury instructions to the District Court. Compare Doc. 500:12-13 with Appellants' Brief: 29-40. *Cf.* Rule 51(d)(1), Fed. R. Civ. Proc. (A party may assign

light most favorable to them under these new standards. They point out that no angry words were used while the Appellants pressed against her without her permission. (Appellants' Brief:32 *et seq.*) But assault and battery does not require angry words. It is sufficient if the touching was done in a harmful or offensive manner. *Ex parte Atmore*, 719 So.2d at 1193; *cf. Bennett v. State*, 57 Ala.App. 568, 571 (1976) ("The law is settled in Alabama that if a man takes improper liberties with the person of a female, or indecently fondles her without her consent, he is guilty of an assault and battery.") Indeed, this is the standard Appellants referenced in their own proposed jury instruction on assault and battery. (Doc. 500:12-13.)

Appellants want this Court to conclude that Appellants were merely being "flirtatious," as they invited Gray to engage in sex with them. But Appellants' intent does not matter, because intent is not an element of assault and battery. *McDonald v. Royal Glove Ins. Co.*, 413 So.2d 1046, 1049 (Ala. 1982). Again, Appellants recognized this in their proposed jury instruction. (Doc. 500:12-13.)

Appellants suggest that Gray consented to the assault and battery by coming to the home and not immediately leaving, or by not warning Appellants not to touch her. (Appellants' Brief: 32-38.) But no principle of law supports the contention that a plaintiff must first warn another not to touch her as a prerequisite to a claim of

as error the giving or the failure to give an instruction if the party properly objected).

23

assault and battery. As Appellants recognized in their Answers (Doc. 47:26; Doc. 48:25), consent is an affirmative defense which must be specially pleaded. *Bennett v. State*, 57 Ala.App. 568, 571-72 (1976). While Appellants raised consent as an affirmative defense in their Answers, they did not seek to include that defense in the jury instructions or the verdict form. (Doc. 433:40-42; Doc. 492:4-5.) Consequently, the affirmative defense was not included in the final instructions. (Doc. 500:12-13.)

There is no evidence that Gray consented to having McDickinson expose her breasts and press them against her in the workplace. (Doc. 576:52:5-10.)

Regardless, Gray testified that she only went to Appellants' home because McDickinson told her she needed to discuss work-related issues with her, and that other employees would be there. ( Doc. 576:23:23-24:3; 21:22-22:5; 91:8-11; 99:18-23.) When Gray asked McDickinson what she wished to discuss with her, she was evasive in her answer. (Doc. 576:22:9-12.) They then offered her alcohol, lured her into the garage, sat close to her, touched her, embraced her, and kissed her, all against her will. (Appellants' Brief:15-21.) Appellant Birchfield asserts that, *if* he was actually in the house on November 14 (which he and McDickinson both denied), and *if* his lips touched Gray's, it was because Gray turned her face to him and not because he took liberties with her. (Appellants' Brief:35.) But, in order to accept this contention, this Court would have to reject Appellee's testimony in its entirety, reject

24

Appellants' own testimony, under oath, that he was not in the garage at the time, and embrace, instead, counsel's argument that the alleged lip-touching was Gray's fault. Gray testified otherwise, and Appellants claim Birchfield was not there. Appellants have no convincing evidence[3] to support the argument they are making on appeal.

Essentially, Appellants are asking this Court to ignore the established standards for proving assault and battery (standards which they, themselves, included in their proposed jury instructions )(Doc. 500:12-13), and adopt a new test, more favorable to the Appellants. In addition, Birchfield is asking this Court to reject his own testimony that he was not in the garage on November 14 and believe his argument that Gray is the one who kissed him. This Court should reject that offer.

Considering all of the evidence favorable to Gray, and rejecting the evidence that a jury would not be required to believe, there is more than sufficient evidence in the record to support the jury's verdict that Appellants both committed the torts of assault and battery.

---

[3]Further complicating Appellants' argument is Jackson's testimony. He testified Birchfield was in the garage on November 14. (Doc. 584:11:17-18; 112:12-113:4.) While he did not hear any requests made of Gray, he testified he saw McDickinson perform oral sex on Birchfield in the garage on that date. Jackson admitted that, at Birchfield's request, he had previously lied about Birchfield being there. *Id.*

**B.** **The Evidence Met The Punitive Damages Standard.**

Alabama, by statute, has defined the conduct which will subject one to punitive damages. § 6-11-20, Ala. Code 1975. Under this statute, punitive damages may only be awarded in a civil tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. § 6-11-20(a), Ala. Code 1975.

"Malice" is the intentional doing of a wrongful act without just cause or excuse, either with an intent to injure the person or under such circumstances that the law will imply an evil intent. § 6-11-20(b)(2), Ala. Code 1975. "Wantonness" is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." § 6-11-20(b)(3), Ala. Code 1975. "Oppression" is subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights. § 6-11-20(b)(5), Ala. Code 1975.

"Clear and convincing evidence" is evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. § 6-11-20(b)(4), Ala. Code 1975.

Alabama allows recovery of punitive damages when the plaintiff shows that she suffered at least nominal damages, and that the acts complained of were

committed with malice, willfulness, or reckless disregard of the rights of others. *Gulf Atl. Life Ins. Co. v. Barnes*, 405 So.2d 916, 925 (Ala. 1981); *Wal-Mart Stores, Inc. v. Thompson*, 726 So.2d 651, 654 (Ala. 1998).

*Peete v. Blackwell*, 504 So.2d 222 (Ala. 1986), cited by Appellants in their brief, is highly instructive. *Peete* was an assault and battery case. The defendant, Dr. Peete, hospitalized one of his patients for a severe nosebleed. As part of this patient's treatment, Dr. Peete applied nasal packs to control the bleeding. On December 26, Dr. Peete was recalled to the hospital because his patient was experiencing difficulties. Because his patient was in danger of suffocating, Dr. Peete immediately sought to retrieve the pack and to control the bleeding. He was assisted in these efforts by the plaintiff, Beverly Blackwell, the nurse in charge of the floor on which the patient had been hospitalized. Blackwell testified that at one point Peete struck her on the forearm and demanded that she "turn on the [goddamn] suction." She also testified that no physical injury of any kind resulted from this striking. It is from this incident that the case arose.

At trial, a jury awarded Blackwell $1 in compensatory damages and $10,000 in punitive damages. Dr. Peete appealed, challenging the award of punitive damages.

After summarizing controlling law on the matter, the Court stated that "the longstanding rule of this jurisdiction requires that particularized circumstances of

aggravation or insult appear in cases of assault and battery if punitive damages are to be properly awarded." *Peete*, 504 So.2d at 223. Applying that standard to the facts before it, the Court found no "abuse of discretion" in the trial court's decision to allow some award of punitive damages, in view of the evidence tending to show that the required circumstances of aggravation or insult accompanied this assault and battery. *Id.* at 224-25. While there was evidence in the record that Dr. Peete had insulted the hospital staff prior to the incident with the plaintiff, and had been yelling and cursing earlier in the morning, the actions directed at Blackwell were accompanied by "aggravating circumstances" in the form of angry or intimidating behavior. *Id.*

Those circumstances pale in comparison to how Appellants treated Gray. While there was no yelling or cursing, the conduct directed towards Gray was intimidating and Gray found the experience shocking and unpleasant. (Doc. 577:44:22-46:10.) She felt powerless and afraid. (Doc. 577:111:10-19.)

Punitive damages may be awarded where there is evidence of malice. As noted above, "malice" is the intentional doing of a wrongful act without just cause or excuse with an intent to injure the person or under such circumstances that the law will imply an evil intent. § 6-11-20(b)(2). McDickinson encouraged Gray to come to her house late at night, claiming she needed to discuss work issues with her.

Birchfield was present[4] and not surprised when she arrived. During the evening it became obvious that McDickinson and Birchfield wanted Gray there so that they could make improper sexual advances towards her. Birchfield heard and tacitly approved of the sexual advances made by McDickinson and did nothing to stop them. In fact, he threw fuel on the fire by pressing his body against Gray's, trapping her between himself and McDickinson, and then kissing Gray against her will.

This was no pop-up party, as Appellants imply, where one guest could reasonably be expected to flirt with another or ask for a date. This was entrapment for the purposes of soliciting Gray's involvement in unwelcome sexual acts. McDickinson's and Birchfield's conduct satisfied the malice element to support an award of punitive damages.

Punitive damages may also be awarded where there is evidence of wantonness. Wantonness is conduct which is carried on with a reckless or conscious disregard of the rights or safety of others. Appellants' conduct on November 14 was with reckless or conscious disregard of Gray's rights or safety. The evidence establishes that, late at night, Appellants lured Gray to their home under false pretenses, where they

---

[4]While Birchfield claimed he was not present, the jury apparently rejected this evidence and concluded that he lied about his whereabouts on that evening, all to conceal his participation in the events that occurred on November 14. From that evidence, alone, a reasonable juror could conclude that Birchfield acted with "malice."

29

subjected her to unwelcome sexual advances constituting the torts of assault and battery. Even after Birchfield observed Gray remove McDickinson's hand from her leg and reject McDickinson's overt sexual proposition, he assisted McDickinson in pulling Gray out of her chair, forced his body against hers, and kissed her against her will. Finally, Birchfield consciously permitted McDickinson to perform a sexual act on him in front of Gray without any regard to how Gray would react to their conduct. Any reasonable person, in Gray's position at that time, would fear for her own safety under those circumstances.

Appellants argue that punitive damages are not appropriate in this case because Gray did not "reprimand, scream, shout, slap, or leave" in response to the assault and battery. (Appellants' Brief:44.) Such conduct is not necessary in order to obtain punitive damages. While there was evidence that Dr. Peete had screamed and shouted at Nurse Blackwell, there was no evidence that she did so. Yet, she received punitive damages nonetheless. *Peete*, 504 So.2d at 224-25.

Appellants also argue that Gray's evidence does not meet the "conscious disregard" standard described in *Berry v. Fite*, 590 So.2d 884 (Ala. 1991). (Appellants' Brief:46.) *Berry* cannot carry that much water. The Court in *Berry* was called to interpret § 6-11-20(a), which requires evidence that the defendant "consciously or deliberately engaged in wanton conduct as a condition for awarding

punitive damages. The Court explained that "deliberate" means "well-advised; carefully considered, not sudden or rash; circumspect; slow in determining; formed, arrived at, or determined upon as a result of careful thought and weighing of considerations; careful in considering the consequences of a step." *Id.* at 885. Appellants' conduct meets this standard. They planned, well in advance, to invite Gray to their home late in the evening. Their conduct was not sudden or rash. Once Gray arrived, they repeatedly asked her if she could be trusted, indicating that they were being circumspect in their conduct. After carefully considering their actions, and only after becoming confident that Gray could be trusted, did Appellants decide to make their wanton sexual advances towards Gray and commit assault and battery. Similarly, weeks later, McDickinson deliberately summoned Gray to her private office where she asked Gray to examine her sunburn.

Rather than undermining Gray's claims, *Berry* supports them.

Appellants' reliance on *Surrency* is similarly misplaced. Appellants did not engage in a harmless or accidental touching of Gray. *Surrency*, 489 So.2d at 1104. Their conduct was planned, coordinated, and carefully considered. There was nothing accidental about McDickinson's touching of Gray's knee, Birchfield's squeezing of Gray between himself and McDickinson, Birchfield's kissing of Gray, or McDickinson's pressing her breasts against Gray, whether in the garage or at work.

31

Appellants repeat their argument that Gray consented to the touching and, therefore, there could be no award of punitive damages. As noted above, Appellants failed to preserve the affirmative defense of "consent" by not including it in the jury instructions. Consequently, they have abandoned that defense and may not raise it on appeal. Nevertheless, the evidence does not establish that Gray consented to the unwelcome touching.

Appellants, citing *Smith v. Metropolitan Sec. Services, Inc.*, 537 F. App'x. 864 (11th Cir. 2013), claim that Gray's proof cannot be found in McDickinson's or Birchfield's credibility, because their testimony, if not believed, should be disregarded. (Appellants' Brief:48.) That is not the import of *Smith*. *Smith* recognizes that, when a jury determines that a witness's testimony is false, it can conclude the opposite of that witness's testimony if the record contains affirmative evidence of the opposite conclusion. *Id.* at 869. Here, both Appellants testified that they were not in a relationship in November 2015 and that Birchfield was not at the garage on November 14, 2015. Yet other evidence, including the testimony of Jackson and Gray, affirmatively places Birchfield in the garage on that date. Consequently, the evidence supporting punitive damages is not based solely upon Appellants' credibility. It is also based upon the evidence of the surrounding circumstances which caused Gray to travel to Appellants' home on November 14, and

the events that happened that day and afterwards.

Gray presented more than a conflict or contradiction in the evidence to prove her entitlement to punitive damages. She proved that McDickinson and Birchfield deliberately lured her to the garage, late in the evening, where they planned on making sexual advances towards her. Once she arrived at their home, they directed her to the secluded garage where they aggressively pursued their scheme, attempting to get Gray to drink alcohol, touching her, forcing her to dance, pressing their bodies against hers, and making sexual propositions towards her. This was no accidental brushing up against another. The clear and convincing evidence established that Appellants' wanton conduct was conscious and deliberate.

## C. Gray Prevailed Against Appellants.

Appellants contend the district court erred by declaring Gray the prevailing party as to her claims against Appellants. According to Appellants, this case ended in a "dead heat." Appellants' arguments are not well taken.

When reviewing a district court's prevailing party determination, the underlying factual findings are reviewed for clear error, but the legal question of whether those facts suffice to render a party the "prevailing party" is reviewed *de novo*. *Beach Blitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1297 (11th Cir. 2021).

Rule 54(d), Fed. R. Civ. Proc., provides that "costs – other than attorney's fees

– should be allowed to the prevailing party." Becoming the prevailing party begins with being "awarded some relief by the court," "which changes the relationship between the parties." *Buckhannon Bd. & Care Home, Inc. V. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001); *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). An enforceable judgment on the merits creates the "material alteration of the legal relationship of the parties," *Buckhannon*, 532 U.S. at 604, even if the judgment includes *de minimis* damages. A party who recovers only nominal damages may still be declared the prevailing party. *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1321 (11th Cir. 2001). *See also, Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017); *Head v. Medford*, 62 F.3d 351, 354-55 (11th Cir. 1995).

A party need not prevail on all issues to justify a full award of costs. A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims. *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995). Further, a party need not succeed on every legal theory or claim in order to be the prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (plaintiff may be prevailing party if she succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit.) That is because "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S.

at 434. Where the plaintiff's claims for relief involve a common core of facts or are based on related legal theories, the litigation is viewed as a whole.

All of Gray's claims or legal theories involved a common core of facts: Birchfield and McDickinson, utilizing their supervisory positions at AlaKoch, subjected Gray to unwelcome sexual advances and touching. These core facts supported various related claims: assault; battery; invasion of privacy; intentional infliction of emotional distress; sexual harassment; negligent/wanton supervision, training and retention. The jury found against Appellants and in favor of Gray on her assault and battery claims and awarded her $25,000 against each Appellant. (Doc. 502.) While the jury found against Gray on all other claims, it is undisputed that Gray succeeded on a significant issue and achieved a substantial benefit in bringing suit. *Buckhannon*, 532 U.S. at 603; *Hensley*, 461 U.S. at 434.

Gray also prevailed on Birchfield's and McDickinson's separate counterclaims. Regardless of their motivations[5], Birchfield and McDickinson voluntarily moved, pursuant to Rule 41(b), Fed. R. Civ. Proc., to dismiss their counterclaims with prejudice. (Doc. 450.) Despite the questionable procedural basis for their motion[6],

---

[5]Appellants explained that they were dismissing their defamation counterclaims because the evidence Gray intended to use to prove the truthfulness of her statements would prejudice Appellants. (Doc. 450.)

[6]Rule 41(b) provides that a defendant may move to dismiss an action or claim if the plaintiff fails to prosecute. It does not appear to apply where a party moves to dismiss its own claim because

the District Court granted Appellants' request and dismissed their counterclaims with prejudice. (Doc. 459.)

A voluntary dismissal with prejudice operates as an adjudication on the merits in favor of the opposing party, and the opposing party, in this case Gray, is considered the prevailing party. *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007). Appellants had alleged in their counterclaims that Gray's description to others of the events of November 14 were false. (Doc. 47:31-35; Doc. 48:29-34.) By dismissing their counterclaims with prejudice, Appellants are barred from claiming in any subsequent suit that Gray's comments were untrue.[7] *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.3d 1498, 1501-02 (11th Cir. 1990). This, too, was a significant victory for Gray.

When measured against these legal standards, Gray was the prevailing party

---

it would prefer that it not be prosecuted. The remainder of the Rule only applies to dismissal of actions, not claims. *Perry v. Schumacher Group of Louisiana*, 891 F.3d 954, 958 (11th Cir. 2018). However, a district court may dismiss an action *sua sponte* for failure to prosecute. *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005). In this instance, because Birchfield and McDickinson were dismissing every claim asserted against Gray, their motion was the equivalent of a motion to dismiss their "action" against Gray. *Cf.* Rule 41(c) (rule applies to a dismissal of any counterclaim); *Farmaceutisk Laboratorium Ferring A/S v. Reid Rowell, Inc.*, 142 F.R.D. 179, 180-81 (N.D. Ga. 1991) (under Rule 41(a)(2), court may dismiss plaintiff's complaint but retain counterclaim if the counterclaim has an independent jurisdictional basis).

[7]Nevertheless, Birchfield continued, at trial, to dispute Gray's claim that he was in the garage on November 14.

as to Appellants.[8]

This Court's decision in *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 38 F4th 1372 (11th Cir. 2022), does not change this result. *Royal Palm* involved claims and counterclaims concerning use of a registered service mark. Ultimately, neither party prevailed on their claims and the legal relationship between the parties was not changed. *Id.* at 1374. The parties achieved a "tie." *Id.* at 1392. Because there was no material alteration in the legal relationship between the parties, there was no prevailing party. *Id.* at 1380.

That cannot be said as between Gray and Appellants. When all is said and done, Gray owes nothing to Appellants on their counterclaims (having prevailed on those claims) and Appellants owe Gray a total of $50,000. That is a material alteration in the legal relationship between Gray and Appellants, in favor of Gray. It is not a "tie" or a "dead heat." There was a "clear winner" – Gray – and the District Court did not err in declaring Gray to be the prevailing party and imposing costs against Appellants.

Finally, the District Court did not engage in a "superficial comparison" of this case with *Vinson v. Koch Foods of Ala, LLC*, No. 2:12-cv-1088-ECM-SRW, 2019

---

[8]Whether, under this Court's decision in *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 38 F.4th 1372 (11th Cir. 2022), the Koch Defendants can also be considered prevailing parties is discussed below.

WL 6971497, at *1 (M.D. Ala. Jan. 29, 2019). Rather, the District Court simply recognized, in a footnote, that there was precedent for what it was doing.

Gray proved that Appellants committed the torts of assault and battery. While she did not prevail on all of the legal theories, she did obtain a jury verdict that altered the legal relationship between her and Appellants. As such, she was properly declared the prevailing party for purposes of her costs.

## II. Arguments Of Appellee - Cross Appellant.

### A. The District Court Erred By Granting Summary Judgment On Gray's Constructive Discharge Claim.

Sometimes, employee "resignations" are the functional equivalent of discharges. If the resignation occurs because the working environment has become intolerable, the resignation is considered a "constructive discharge." *See Sure Tan, Inc. v. NLRB*, 467 U.S. 883, 894 (1984) (NLRB may find employer engaged in unfair labor practice when for the purpose of discouraging union activity, the employer creates intolerable working conditions). "Constructive discharge" claims may be pursued under Title VII. *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). If the intolerable working conditions are the result of a hostile environment caused by sexual harassment, then the constructive discharge violates Title VII. *Henson v. City of Dundee*, 682 F.2d 897, 908 (11th Cir. 1982).

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Suders*, 542 U.S. at 141. The inquiry is objective: Did the working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign? *Id.*

A constructive discharge claim can develop because of sexual harassment or a hostile work environment. A sexual harassment/hostile-environment constructive discharge claim entails more than a sexual harassment/hostile environment claim. *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1282 (11th Cir. 2003). The party asserting such a "compound claim" must show that the working conditions were sufficiently severe or pervasive to alter the conditions of employment and that the working conditions were so intolerable that a reasonable person would have felt compelled to resign. *Id.* at 147. Finally, constructive discharge, by itself, qualifies as an adverse employment action. *Green v. Brennan*, 578 U.S. 547, 555 (2016).

At the summary judgment stage, the District Court concluded that the evidence was sufficient for Gray to present her sexual harassment claim to the jury: that McDickinson and Birchfield harassed Gray because of her sex; that Gray a reasonable jury could find that the harassment was sufficiently severe or pervasive to create a hostile work environment; and AlaKoch could be liable, either directly or vicariously.

39

(Doc. 415:14-34.)

But the District Court concluded that Gray's resignation could not qualify as a "constructive discharge" because she could not point to a tangible employment action that would cause her to resign, and because the events of November 14, 2015 were not sufficiently intolerable to support that claim. (Doc. 415:34-38.) This conclusion was in error and should be reversed.

First, as noted above, constructive discharge, itself, qualifies as an adverse employment action. Second, Gray's decision to resign was not based solely upon the events which occurred on November 14.

One week after the garage incident, McDickinson summoned Gray to her office, where she sat with her blouse unbuttoned, and pressed her breasts against Gray. And that was not the last unwelcome invitation McDickinson extended to Gray. McDickinson continued to invite Gray to her house and even invited her to go to the beach with her and Birchfield. These unwelcome invitations continued into late February, despite Gray's continued rejections.

Gray had told two supervisors about McDickinson's conduct and that she felt uncomfortable around her. She asked them to stay with her if McDickinson asked to see her in the bull-pen area. Despite learning of McDickinson's conduct towards Gray, the supervisors did not report the conduct as required by AlaKoch's policies.

In March, 2016, after Gray complained about Betty Stabler, Birchfield decided to make McDickinson Gray's supervisor and instructed McDickinson to watch Gray and document her activities.

Then, in April, Birchfield, the Complex HR Manager, and the highest ranking official in AlaKoch's Montgomery complex, asked Gray to go to Florida with him and McDickinson. Again, Gray declined. Soon thereafter, McDickinson issued a Memorandum of Understanding, falsely claiming that Gray had failed to report her absences.

The District Court concluded that none of these events qualified as "adverse employment actions" (Doc. 415:36), and that, standing alone, the two allegations of sexual touching were not sufficiently severe to support Gray's constructive discharge claim. "Afterall, constructive discharge claims require a greater severity than required to prove a hostile working environment." *Id.* at 37.

But that analysis is incorrect. The facts necessary to establish constructive discharge must be weighed on a case-by-case basis. Often, whether the employer's actions constitute constructive discharge is a matter of degree. *See, Patton v. Keystone RV Co.*, 455 F.3d 812, 818 (7th Cir. 2006) (reversing summary judgment where plaintiff feared that her supervisor was an obsessed man who, based on his previous actions showing no regard for her right to control who could touch her, was

capable of, and desirous of, physically assaulting her); *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 27-28 (1ˢᵗ Cir. 2002) (constructive discharge exists where harasser stationed plaintiff near his office where she would have to interact with him).

Further, the something "more" that is required to establish a constructive discharge claim does not mean more than the particular evidence offered to support a particular sexual harassment claim. What is required is more evidence than necessary to meet the threshold for establishing a hostile environment claim. For example, in *McFarland v. Henderson*, 307 F.3d 402 (6ᵗʰ Cir. 2002), McFarland alleged that she was constructively discharged as a result of sex discrimination. The district court had dismissed her claim based on timeliness. McFarland's sex discrimination allegation was based upon a single event, when her acting supervisor attempted to kiss her, and made comments about her lips and neck. *Id.* at 404. After rejecting this one advance, her supervisor began spreading rumors about her and others in the workplace, which were demeaning to her. Ultimately, four months after the single-kiss incident, her supervisor refused to allow McFarland to work during the lunch break as other employees were allowed to do. McFarland finally resigned, claiming that she left because of the hostile work environment created by her supervisor.

While the Court of Appeals reversed based on the district court's timeliness

42

analysis, it remanded the case to the district court to consider McFarland's constructive discharge case. *Id.* at 409.

Gray suffered more than a mere attempted kiss from her supervisor. She was groped, kissed, and touched by two supervisors and invited to engage in sexual activity with them. Both supervisors used their positions with AlaKoch to lure Gray to their home, where the ambushed her with their sexual demands. As the District Court noted:

> The severity of the garage incident is heightened by that fact that the harassment was a coordinated, simultaneous assault by two HR managers. Indeed, the alleged physical assault was not just one authority figure sexually assaulting Gray, but two such persons assaulting Gray at the same time, followed immediately by an indecent exposure and exhibitionist sex act. While at a supervisor's house, having been lured there under false pretenses, Gray was touched, 'sandwiched' between two supervisors' bodies as they sexually rubbed against her, kissed her, and forced her to witness a sex act – all uninvited and despite he repeated refusals. In short, if true, these two HR supervisors crossed almost every physical and emotional boundary to coerce their subordinate to have group sex with them. Such conduct is inherently severe, physically threatening, and humiliating.

(Doc. 415:23.)

One must wonder what more Gray would have to endure in order to justify quitting under these circumstances. But she did not, hoping that her refusals would end the matter. They did not. Birchfield and McDickinson continued in their campaign to get Gray to have sex with them by continuing to invite her to their home

43

or to take vacations with them. While Gray believed she could rebuff these advances simply by rejecting them, it became apparent in March and April, after Birchfield made McDickinson her supervisor and Birchfield, again, invited Gray to travel to the beach with them, that their campaign would be unrelenting.

A reasonable jury could conclude that, by that time, Gray's working conditions had become so intolerable that a reasonable person would have felt compelled to resign. Gray presented sufficient evidence from which a reasonable jury could conclude that her decision to quit AlaKoch was reasonable and in response to intolerable working conditions. The District Court's decision granting summary judgment was in error and should be reversed.

**B. Gray Is Entitled To A New Trial For Her Title VII Claim Against AlaKoch.**

**i. Introduction.**

Gray alleged that AlaKoch, acting through its Complex HR Manager David Birchfield and the HR Manager Melissa McDickinson, violated Title VII by subjecting Gray to a sexually hostile work environment through unwanted touching and sexual advances, both in the workplace and outside of it. (See doc. 5, ¶¶ 36-81, 139-147, 173-181). After hearing all of the evidence, the jury concluded that the conduct engaged in by Birchfield and McDickinson constituted the torts of assault

and battery as to Gray. (Doc. 501, at 4).

Nevertheless, the jury determined, for purposes of Gray's Title VII claim against AlaKoch, that neither Birchfield nor McDickinson had harassed Gray because of her sex (Doc. 501:1.) It made no further determinations with regard to Gray's Title VII claim, *i.e.* whether she was subjected to a hostile work environment, whether AlaKoch exercised reasonable care to prevent the conduct, or whether Gray failed to take advantage of the opportunities provided of Koch-AL to avoid harm. (Doc. 501:1-2.)

The jury's conclusion is contrary to the great weight of the evidence and the District Court erred by not granting Gray a new trial on her Title VII claim against AlaKoch.

### ii. Legal Standard.

A jury's verdict is not, and has never been, beyond all review. *See* 11 Charles Alan Wright, et al., *Federal Practice & Procedure*, § 2806 (3rd ed. 2012). A district court may grant a motion for a new trial for any reason for which a new trial has heretofore been granted in an action at law in federal court. Rule 59(a)(1)(A), Fed. R. Civ. Proc. Grounds for a new trial include, among many other things, that the verdict is against the great weight of the evidence. A judge should grant a motion for a new trial when "the verdict is against the clear weight of the evidence or will result

in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984). So as not to supplant the judgment of the jury, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence. *Id.* The Circuit reviews a denial of a motion for new trial under the abuse of discretion standard. *Lambert v Fulton County*, 253 F.3d 588, 595 (11th Cir. 2001). When employing the abuse-of-discretion standard, the Court will affirm unless the district court made a clear error of judgment, or has applied the wrong legal standard. *Maiz v. Virani*, 253 F.3d 641, 662 (11th Cir. 2001).

Following the trial, Gray filed a motion for a new trial on her Title VII claim against AlaKoch. (Doc. 513.) She argued that the jury's determination on Gray's Title VII claim was not supported by the great weight of the evidence and was inconsistent with the verdict on assault and battery. *Id.* at 4.

The District Court concluded that the verdicts were not inconsistent because the Title VII and assault and battery claims have different elements. (Doc. 538:5.) In particular, the District Court noted that, while discriminatory motive is an element of a Title VII claim, it is not an element of an assault and battery claim. *Id.*

The District Court also concluded that the verdict was not against the great

weight of the evidence because Gray had the burden of proving that she was subject to severe or pervasive conduct because of her sex, and the evidence was disputed as to what actually happened. *Id.* at 5-6.

Both of these conclusions are wrong and the District Court made clear error of judgment in denying Gray's motion for a new trial.

### iii. Gray's Title VII Claim Against AlaKoch.

Gray alleged that AlaKoch, acting through its *alter ego* Birchfield and its supervisor McDickinson, "harassed her because of her sex and that the harassment created a hostile work environment." (Doc. 500:6.) As the District Court explained to the jury in its closing instructions, to succeed on her claim, Gray had to prove three things: (1) McDickinson and/or Birchfield harassed Gray because of her sex; (2) the harassment created a hostile work environment for Gray; and (3) Gray suffered damages because of the hostile work environment. (Doc. 500:6-7.) Each of these elements, along with elements related to AlaKoch's affirmative defense, were included in the Verdict Form. (Doc. 501.) The first question on the verdict form was: "Do you find from a preponderance of the evidence that Melissa McDickinson and/or David Birchfield harassed Ka'Toria Gray because of her sex?" (Doc. 501:1.) The second question asked the jury to determine whether such harassment created a hostile work environment. *Id.*

47

As the District Court explained in its closing instructions to the jury, a hostile work environment exists if an employee is subjected to unwelcome, offensive acts or statements about sex that were so severe or pervasive that they materially altered the terms or conditions of Gray's employment. (Doc. 501:7.) The District Court also instructed the jury on the meaning of "severe or pervasive" and "material alteration." *Id.* The District Court did not instruct the jury on the meaning of "harassed."

The District Court denied Gray's motion for a new trial as to her Title VII claim because "Gray had the burden of proving that she was subject to severe or pervasive conduct because of her sex, an issue that was contested by the Defendants." (Doc. 538:5.) But that conclusion is not relevant to the jury's actual verdict.

The jury did not decide that the harassment experienced by Gray did not create a hostile work environment. (Doc. 501:1.) The jury left that question unanswered. The jury only concluded that McDickinson and/or Birchfield did not harass Gray because of her sex. *Id.* Consequently, focusing on the evidence which might be relevant to the second question, which the jury did not address, misses the point Gray was making.

The jury found both McDickinson and Birchfield liable for assault and battery of Gray. To reach this result as to Birchfield the jury had to find, as a matter of fact, that Birchfield was in the garage on November 14, rejecting his testimony, and the

testimony of others, that he was visiting a friend in Florence. They jury also had to conclude that McDickinson and Birchfield: (1) touched Gray; (2) intended to touch Gray; and (3) did this touching in a harmful or offensive manner that would likely offend a reasonable person. (Doc. 500:12; Doc. 501:4-5). The jury also found, through clear and convincing evidence, that both McDickinson and Birchfield consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to Gray. ( Doc. 501:4-5.)

The jury also had to reject McDickinson's testimony that, if anything happened that evening, Gray welcomed it. If the jury had believed McDickinson, it could not have found her liable for assault and battery. *Bennett*, 57 Ala.App. at 571 (assault and battery consists of taking improper liberties with another without consent).

While the District Court was correct, generally, when it stated that a discriminatory motive is not an element of assault and battery, that does not mean a discriminatory motive can never be the basis for an assault and battery. The only evidence in the record supporting the jury's assault and battery verdict came from Gray and Jackson. Gray explained how the unwelcome touching and fondling had a sexual nature and was accompanied by invitations to engage in sexual conduct. Jackson, too, described the interactions among Birchfield, McDickinson and Gray as sexual in nature. The assault and battery was not a simple aggressive touching. It

49

was an aggressive touching in a sexual manner, accompanied by invitations for sex. Indeed, even Appellants seem to recognize their conduct was sexually motivated because they characterize the conduct as "flirtatious." (Appellants' Brief: 27, 32, 37, 40, 41, 47.)

If, as the District Court suggested, the jury did not consider the events of November 14 to have been motivated by sex, what did they think actually happened? There is no evidence that Gray pushed herself between Birchfield and Gray, or invited their touching and fondling. There is no evidence that Gray just accidently arrived at McDickinson's home and interjected herself into a private party. The only touching that occurred on November 14 involved McDickinson's and Birchfield's sexual attraction to Gray.

Yet the jury concluded, somehow, that Gray was not harassed because of her sex. (Doc. 501:1.) This erroneous conclusion cannot stand.

As the Supreme Court recognized in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998), Title VII courts and juries "have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex." This Court, itself, has concluded that making comments

or advances of an erotic or sexual nature constitutes sexual harassment. *Llampallas v. Mini-Circuits, Lab, Inc.*, 162 F.3d 1236, 1246 (11th Cir. 1998); *Fredette v. BVP Management Assoc.*, 112 F.3d 1503, 1505 (11th Cir. 1997) (noting that the court readily concludes that harassment occurs "because of sex" where a heterosexual male makes unwelcome advances toward a female). Whether that harassment rises to the level of being severe or pervasive is a separate question.

Appellants' conduct toward Gray constituted sexual harassment under Title VII authority. The jury's verdict is contrary to the great weight of the evidence and is not consistent with the law. Letting the verdict stand would be a miscarriage of justice. Gray should be granted a new trial on her Title VII claim to correct this error.

## C. The District Court Erred By Awarding Costs To The Koch Defendants.

### 1. There Can Only Be One Prevailing Party.

In her Third Amended Complaint, Gray asserted various claims against AlaKoch, Koch, McDickinson, and Birchfield. (Doc. 5.) McDickinson and Birchfield each asserted two counterclaims in their answers: defamation and invasion of privacy. (Doc. 47; Doc. 48.) At summary judgment, the District Court dismissed some of Gray's claims as well as McDickinson's and Birchfield's invasion of privacy claims. McDickinson and Birchfield later dismissed their defamation claims with

prejudice.  (Doc.  459.) The remaining claims proceeded to trial.  (Doc.  415:71-72.)

The jury returned a mixed-verdict.  While finding in favor of Gray as to her claims against McDickinson and Birchfield, awarding a total of $50,000, the jury found in favor of the Koch Defendants as to the claims asserted against them.  The District Court entered Final Judgment on March 17, 2022.  (Doc.  504.)  The Final Judgment proceeded, party by party and claim by claim, to identify in whose favor judgment was being entered as to each claim, and taxed costs accordingly, *e.g.* "Due to judgment entered against Melissa McDickinson on the claim for assault and battery and due to the voluntary dismissal with prejudice of her counterclaim against Ka'Toria Gray on February 23, 2022 (see Doc.  459), Plaintiff Ka'Toria Gray's costs are taxed against Melissa McDickinson for which execution may issue."  (Doc.  504:2.)  Consequently, the Court taxed costs in favor of Gray against McDickinson and Birchfield, but also taxed costs against Gray in favor of Koch Foods of Alabama, LLC, and Koch Foods, Inc.  (Doc.  504:2-3.)  The Court did not designate any single party as "the" prevailing party.

Rule 54(d), Fed.  R.  Civ.  Proc., provides that "costs – other than attorney's fees – should be allowed to the prevailing party."  As this Court held in *Royal Palm*, "[t]he plain language of Rule 54 unequivocally restricts the number of prevailing parties to one.  This is because the text of Rule 54 posits the awarding of costs to 'the

52

prevailing party' – in the singular – and not to 'the prevailing parties.'" *Royal Palm*, 38 F.4th at 1378. Consequently, "the text of Rule 54(d) does not allow for multiple prevailing parties (stated differently, that there can only be one winner for the purposes of costs)." *Id.* at 1379.

This reading of Rule 54 is consistent with the overall tenor of the Rules, which generally focus on "actions," not claims. *See* Rule 2, Fed. R. Civ. Proc. (one form of action); Rule 14, Fed. R. Civ. Proc. (allowing claims to be severed into separate actions); Rule 20(a)(2), Fed. R. Civ. Proc. (joining all defendants in one action); Rule 24, Fed. R. Civ. Proc. (allowing intervention where there is an interest in the action); Rule 42, Fed. R. Civ. Proc. (allowing for the consolidation of actions).

This same concept informs our understanding of final judgments. The Supreme Court long ago clarified that "a 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). An order adjudicating fewer than all the claims in a suit, or adjudicating the rights a liabilities of fewer than all the parties, is not a final judgment. *Scott v. Advanced Pharmaceutical Consultants, Inc.*, 84 F.4th 952, 959 (11th Cir. 2023). Regardless of the number of claims or number of parties, Rule 54 contemplates, as a default, the entry of a single Final Judgment with a single prevailing party. "Rule 54(d) has no special rule or

exception for mixed judgment cases, where both parties have some claims decided in their favor ... ." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010). Indeed, if a district court enters an order adjudicating fewer than all the claims or the rights and liabilities of fewer than all the parties, that order does not end the action as to any of the claims or parties. Rule 54(b), Fed. R. Civ. Proc. Consequently, "just because a party can be said to have "prevailed" on a claim does not necessarily make him a 'prevailing party' as the term is used in Rule 54." *Shum*, 629 F.3d at 1367.

### 2. Ka'Toria Gray Is The Presumptive Prevailing Party.

As this Court recognized in *Royal Palm*, "prevailing party" is a legal term of art. *Royal Palm*, 38 F.4th at 1376. A "prevailing party" is a party which has been "awarded some relief by the court." *Buckhannon*, 532 U.S. at 503. In addition, a party must be able to point to a change in the relationship between the parties in order to be the prevailing party. *Garland*, 489 U.S. at 792-93. "Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced." *Head*, 62 F.3d at 354 (quoting *United States v. Mitchell*, 580 F.2d 789, 794-94 (5th Cir. 1978)).

But these principles do not easily resolve the questions which arise where the

plaintiff succeeds on certain claims against some defendants but fails as to other claims asserted against other defendants. The decision in *Royal Palm* did not resolve this issue because there were only two parties involved in that case. *Royal Palm*, 38 F.4th at 1379 (discussing instances where "neither" party prevails). And it cannot be said in this case that Gray obtained merely a symbolic victory or that the case ended in a "tie" or "dead heat."

Further, these questions cannot be resolved merely by examining cases where a party defending a claim has prevailed and plaintiff has lost. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016) (a party defending a claim has fulfilled its primary objective whenever the plaintiff's challenge is rebuffed).

While some circuits answer these questions by following a "two-prevailing party" approach, *see Kollsman, A Div. of Sequa Corp.*, 996 F.2d 702, 706 (4th Cir. 1993), that approach is foreclosed by the decision in *Royal Palm.*

To a certain degree, Rule 54, itself, provides the answer by not creating any specific presumptive exception for mixed-judgment cases. Absent "a federal statute, these rules, or a court order provid[ing] otherwise, costs ... should be allowed to the prevailing party." Rule 54(d)(1), Fed. R. Civ. Proc. While the Final Judgment entered by the District Court could be considered "an order provid[ing] otherwise," that discretion is not unfettered. "[W]here the trial court denies the ... costs, the court

must give a reason for its denial of costs so that the appellate court may have some basis upon which to determine if the trial court acted within its discretionary power." *Head*, 62 F.3d at 354 (citing *Gilchrist v. Bolger*, 733 F.2d 1551, 1557 (11th Cir. 1984)).

The denial of costs to the prevailing party is "in the nature of a penalty for some defection [on the prevailing party's] part in the course of the litigation." *Chapman*, 229 F.3d at 1038-39. While the district court did not deny costs to Gray, the decision to order her to pay the costs of the Koch Defendants imposed a significant burden upon her and required an explanation.

The Final Judgment contained no such explanation and the clerk taxed costs in favor of the Koch Defendants in the amount of $ 51,020.12. (Doc. 522.) The clerk also taxed costs against Appellants in the amount of $ 98,589.38. (Doc. 523.) While Appellants were not awarded their costs, the consequence of the District Court's order is that Gray will be paying costs that were incurred on behalf of Appellants.

Based upon the bill of costs filed by the Koch Defendants, all costs associated with this case, from discovery through trial, were billed to, and paid by, the Koch Defendants. (Doc. 516.) This includes depositions that were noticed by Appellants' counsel. Compare Doc. 56:55-56 (notice of deposition of Steve Jackson signed by Marion Walker) with Doc. 516:34 (invoice for said deposition sent to Rachel

Barlotta). The Koch Defendants assumed the financial responsibility for summonses, trial subpoenas and witness fees. (Doc. 516:9-12.) Appellants counsel had access to, and relied upon, the exhibit management assistant, paid for by the Koch Defendants, when questioning witnesses. It is undisputed that the Koch Defendants have agreed to pay for Birchfield and McDickinson's legal representation. (Doc. 242-6:160:21-164:12.) Based upon the bill of costs filed by the Koch Defendants, it appears this agreement included initially absorbing and/or assuming Appellant's costs. The Koch Defendants have not explained what portion of the costs, included on their bill of costs, are attributable to the representation of Appellants, including the prosecution of their counterclaims against Gray.

Gray prevailed on her assault and battery claims against Appellants. The jury award changed the legal relationship between Gray and Appellants. This was not a case where neither party obtained the relief it sought. There is no evidence that Gray engaged in any conduct in the course of the litigation that would justify the imposition of a penalty on her. Nevertheless, the District Court's Final Judgment imposes such a penalty on Gray, without any explanation or justification.

Gray, as prevailing party, was entitled to her entire costs. Because there may only be a single "prevailing party," the Koch Defendants were not entitled to their costs absent some explanation from the District Court. The Final Judgment awarding

costs to the Koch Defendants is inconsistent with the record and the controlling legal principles. It should be reversed.

## CONCLUSION

Gray presented evidence to establish that McDickinson and Birchfield intentionally and wantonly committed assault and battery against her when they lured her into their home, fondled her against her will, and made illicit propositions towards her. The evidence is more than sufficient to support the jury's verdict on both the assault and battery claims and the award of punitive damages. Further, as to Appellants, Gray is the prevailing party and the District Court did not err in awarding Gray her costs in this action.

The District Court, however, did err, by granting summary judgment on Gray's constructive discharge claim and by denying Gray a new trial on her Title VII sexual harassment claim. Those decisions should be reversed and this case remanded for a new trial on those two Title VII claims.

The District Court also erred by declaring that there was more than one "prevailing party" in this case. The designation of the Koch Defendants as prevailing parties was not consistent with controlling precedent and the judgment should be vacated and the case remanded for a new determination on this issue.

Respectfully submitted,

/s/ *Heather N. Leonard*
Heather N. Leonard

/s/ *Charles E. Guerrier*
Charles E. Guerrier
Co-Counsels for Appellee - Cross Appellant
Ka'Toria Gray

OF COUNSEL:

| | |
|---|---|
| Cynthia Forman Wilkinson | Alicia K. Haynes |
| Wilkinson Law Firm, P.C. | Charles E. Guerrier |
| 1317 Third Avenue North | HAYNES & HAYNES, P.C. |
| Suite A | 1600 Woodmere Drive |
| Birmingham, AL 35203 | Birmingham, AL 35226 |
| (205) | (205) 879-0377 |
| cwilkinson@wilkinsonfirm.net | akhaynes@haynes-haynes.com |
| | ceguerrier@haynes-haynes.com |

## CERTIFICATE OF COMPLIANCE

I certify this brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B)(1), Fed. R. App. Proc., in that, excluding the parts of the document exempted by Rule 32(f), Fed. R. App. Proc., this brief contains 12,868 words.

I further certify this brief complies with the typeface requirements of Rule 32(a)(5), Fed. R. App. Proc., and the type-style requirements of Rule 32(a)(6), Fed. R. App. Proc., in that this document has been prepared using Wordperfect in 14-point font in Times New Roman.

/s/ *Charles E. Guerrier*
Charles E. Guerrier
Co-Counsel for Appellee - Cross Appellant
Ka'Toria Gray

# CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to the following:

**Counsel for Appellants Birchfield and McDickinson:**

Marion Walker
FISHER PHILLIPS LLP
2100A South Bridge Parkway
Suite 650
Birmingham, AL 35209
mfwalker@fisherphillips.com

Andrew J. Baer
FISHER PHILLIPS LLP
201 St. Charles Avenue
Suite 3710
New Orleans, LA 70170
abaer@fisherphillips.com

**Counsel for Koch Foods of Ala., LLC**:

Rachel V. Barlotta
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
1901 Sixth Avenue North
Suite 2600
Birmingham, AL 35203
rbarlotta@bakerdonelson.com

/s/ *Charles E. Guerrier*
Charles E. Guerrier
Co-Counsel for Appellee - Cross Appellant
Ka'Toria Gray

61